FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

**Mar 19, 2021**

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS WILLIAM SINCLAIR RICHEY,<br><br>                        Plaintiff,<br><br>  v.<br><br>J. AIYEKU, L. YOUNG, and K. WALKER.<br><br>                       Defendants. | NO: 4:16-CV-5047-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION |

BEFORE THE COURT is Plaintiff Thomas William Sinclair Richey's

Motion for Summary Judgment, ECF No. 99, Defendant Joni Aiyeku's[1] response

in opposition and seeking cross-summary judgment, ECF No. 100, and Plaintiff's

---

[1] Counsel from the Washington State Attorney General's Office has filed a statement pursuant to Fed. R. Civ. P. 25(a) informing Mr. Richey and the Court that Defendant Ms. Aiyeku died in January 2021. ECF No. 114 (filed Feb. 26, 2021).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
SUMMARY JUDGMENT MOTION ~ 1

reply, ECF No. 101.  The Court has reviewed the parties' filings, the relevant law, and is fully informed.

## BACKGROUND

*Procedural History*

On April 15, 2016, Plaintiff Richey sued Defendant Aiyeku under 28 U.S.C. § 1983 for an alleged violation of his First Amendment right to petition the government for redress of grievances and to be free from retaliation for doing so. ECF No. 1.  Richey's allegations concerned 25 grievances he claimed to have filed while incarcerated at the Washington State Penitentiary in Walla Walla, Washington.  *Id.*  In March 2017, this Court granted Richey's partial summary judgment motion and denied Aiyeku's cross-motion for summary judgment, leaving only the damages issue to be resolved.  ECF No. 57 at 6.  Aiyeku appealed the summary judgment order to the United States Court of Appeals for the Ninth Circuit, and the Court stayed this case while the appeal was pending.

The Ninth Circuit issued its decision in Aiyeku's appeal on January 15, 2020, holding that Defendant is not entitled to qualified immunity on Richey's right to petition claim and affirming the district court decision on that issue.  ECF No. 83; *Richey v. Aiyeku*, 790 Fed. Appx. 115, 116 (9th Cir. 2020) (unpublished). The Ninth Circuit further held that Aiyeku is entitled to qualified immunity on Richey's retaliation claim and remanded the matter to this Court for entry of judgment in Aiyeku's favor on the retaliation claim.  *Id.*

After the Ninth Circuit issued its mandate, Plaintiff moved to amend his Complaint to add two additional defendants, "L. Young" and "K. Walker" and 25 additional grievances supporting his alleged constitutional violations. ECF Nos. 86 and 87. In resolving Richey's Motion to Amend, the Court granted Richey leave and accepted Plaintiff's First Amended Complaint, filed before the mandate had issued, as the operative complaint in this matter. ECF Nos. 65 and 91. The Court also directed the District Court Clerk to enter judgment in favor of Aiyeku on Richey's retaliation claim against her. ECF No. 91 at 6. Judgment was entered accordingly on September 22, 2020. ECF No. 92.

In Plaintiff's First Amended Complaint, he alleges that:

> On 50 occasions, Defendants Aiyeku, Young, or Walker instructed me to rewrite each grievance to remove language they each determined was abusive and derogatory. None of said defendants would explain to me what specific language was abusive and derogatory. Without such an explanation, I informed each said defendant to process my written grievances "as is."
>
> In response to my refusal to censor language contained in my grievances, the defendants took the retaliatory and adverse actions of punishing me by depriving me of my First Amendment right to petition for redress of grievances.

ECF No. 65 at 5. Plaintiff makes a jury demand and seeks an award of "punitive damages as well as any other damages allowable for an amount to be determined by a jury" as well as "recompensation [sic] for filing fees and costs related to the filing of this lawsuit." *Id.* at 8.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 3

1  Defendants answered Plaintiff's First Amended Complaint on October 6, 2020, and clarified that "L. Young" refers to Grievance Coordinator Lee Young and "K. Walker" refers to Grievance Coordinator Kevin Walker. ECF No. 96 at 2. Defendants maintain that they are entitled to qualified immunity from Plaintiff's claims. *Id.* at 4. Defendants also assert that their actions "furthered legitimate penological goals" and that Defendants "at all times, acted in good faith in the performance of their duties" in all matters related to this lawsuit. *Id*.

Plaintiff subsequently filed the instant Motion for Summary Judgment, ECF No. 100, and, in responding, Defendants requested summary judgment in their favor or, in the alternative, denial of Plaintiff's summary judgment request and a determination that Plaintiff is not entitled to compensatory or punitive damages as a matter of law. ECF No. 100 at 24.

***Washington Department of Corrections Offender Grievance Program***

As the Court previously found, the Washington Department of Corrections ("DOC") receives and resolves inmate grievances on a wide range of issues relating to an inmate's incarceration through the DOC's Offender Grievance Program ("OGP"). *See* ECF Nos. 54 at 2; 57; *see also* ECF No. 44-1. The objective of the OGP is to "promote[] proper and effective communication between staff and offenders in an effort to resolve issues at the lowest possible level. ECF No. 44-1 at 4. As Aiyeku indicated in December 2016, at the time

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 4

1  relevant to Richey's claims, grievance coordinators occasionally instructed inmates
2  to rewrite a grievance to remove "derogatory and abusive language that has no
3  bearing on the inmate's complaint." *Id.* (citing ECF No. 43).
4    If an inmate does not rewrite the grievance as requested, the grievance
5  coordinator administratively withdraws the grievance. ECF No. 44 at 3.  An
6  administrative withdrawal does not amount to a final administrative adverse
7  decision; an inmate may resubmit a grievance regarding the same complaint. *Id.*

### *Richey's Grievances at the Washington State Penitentiary*

9    Richey alleges that when he was housed in the Washington State
10 Penitentiary's Intensive Management Unit, beginning in April 2015, he
11 experienced "staff abuse, misconduct, and acts of antagonism that lasted for about
12 a year." ECF No. 99 at 1.  Richey alleges that he submitted fifty grievance
13 complaints regarding this alleged abuse and misconduct, but the three grievance
14 coordinators named as Defendants in this action returned the grievances to Richey
15 with instructions to rewrite them to remove what they claimed was "abusive and
16 derogatory" language.  Richey alleges that Defendants did not specify which
17 language they found to be abusive and derogatory, and Richey consequently
18 resubmitted the grievances without removing any language.  There is no dispute
19 that when Richey resubmitted the grievances without removing the offensive
20 language despite the rewrite instruction, Defendants deemed the grievances
21 administratively withdrawn. *See* ECF No. 100 at 2.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
SUMMARY JUDGMENT MOTION ~ 5

This Court previously granted summary judgment to Richey against Aiyeku with respect to the section 1983 liability for a First Amendment right to petition claim for the 25 grievances filed between November 16, 2015, and March 28, 2016, that Richey identified in his original Complaint. ECF No. 57 at 6. All 25 of the grievances that were the subject of the original Complaint were administratively withdrawn by Aiyeku. ECF No. 44-2–44-26.

In the First Amended Complaint, Richey alleges that his First Amendment rights were violated by 25 additional grievances that he filed from June 11, 2015, to May 1, 2016, and that were administratively withdrawn by Aiyeku, Walker, and Young. Richey attached the 25 additional grievances, and prison kites relating to the grievance coordinators' handling of the grievances, to the instant Motion for Summary Judgment. ECF No. 99 at 9–60. The grievances contained complaints against prison staff ranging from poor-quality food to denials of Richey's requests for clean underwear, a shower, use of the telephone, and numerous other substantive issues. ECF No. 99 at 2–3, 9–60.

Defendants do not dispute that Richey raised substantive complaints in his grievances but instead maintain that Richey included derogatory, abusive descriptions of prison staff in his complaints that did not contribute to bringing non-frivolous issues to the attention of staff. *See* ECF No. 100 at 1–2. Defendants maintain that Richey's descriptions of staff insulting their physical appearance and attributes, intellectual abilities, and ethnicity supported the rewrite instructions

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 6

under the former OGP policy, which prohibited the use of abusive language and served a legitimate penological purpose in prohibiting abusive behavior. *Id.* at 2. Richey does not dispute that the grievance forms contained disrespectful statements. *See* ECF Nos. 65, 99, and 101.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable

to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

## DISCUSSION

Plaintiff claims that Defendants violated his First Amendment rights when they required him to remove language from his grievance complaints. ECF Nos. 65; 99 at 6–8. Plaintiff brings this cause of action under 42 U.S.C. § 1983. *Id.*

Parties can seek relief under 42 U.S.C. § 1983 against any "person" who, "under color of state law, deprives another of rights protected by the U.S. Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Prison officials generally may be liable in an individual capacity under section 1983 or for a constitutional violation in which he or she personally participated. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

### Right to Petition

While incarcerated individuals retain protection under the U.S. Constitution, "many constitutional rights are appropriately restricted within prison walls, and 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Williams v. McKay*, No. 1:20-cv-00008-BLW, 2020 U.S. Dist. LEXIS 397182020 U.S. Dist. LEXIS 39718, at *6 (D. Idaho Mar. 6, 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 545–46 (1979)). Specific to Plaintiff's claims, incarcerated individuals enjoy free speech rights, but those rights can be narrower

than the free speech rights enjoyed by individuals who are not incarcerated. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. When evaluating a prison regulation or action, a court considers: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id*. at 89–93.

It is "well established" that among the constitutional rights that incarcerated individuals retain is the right to petition the government for redress of grievances. *Brodheim v. Cry,* 584 F.3d 1262, 1273 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); *Bruce v. Yist*, 351 F.3d 1283, 1288 (9th Cir. 2003)); *see also Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (holding that the right to petition applies to incarcerated individuals and includes the right to use a prison grievance process, if such a process exists), *overruled on other grounds by*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 9

1 *Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001)).  The Ninth Circuit has further
2 recognized a qualified right of prisoners to use disrespectful language in prison
3 grievances.  *See id*. at 1281–82; *Richey v. Dahne*, 733 Fed. Appx 881, 883–84 (9th
4 Cir. 2018) (unpublished).

5    In *Bradley*, the Ninth Circuit stated broadly that "prison officials may not
6 punish an inmate merely for using 'hostile, sexual, abusive or threatening'
7 language in a written grievance."  *Id*. at 1282.  Similarly, in *Brodheim*, the court
8 held that a defendant's warning to an inmate about what the inmate writes in a
9 grievance "cannot escape constitutional scrutiny by citing a legitimate penological
10 interest."  584 F.3d at 1273.  The Ninth Circuit further held that "prohibiting
11 disrespectful language" does not constitute a legitimate penological goal and that at
12 the time of the *Brodheim* opinion in 2009, this proposition already was established
13 precedent in this Circuit.  *Id*. at 1272.

14    To qualify as protected speech, a grievance must contain an actual grievance
15 seeking a practical result and not merely function as a vehicle of harassment.  *See*
16 *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) ("Prisoners' grievances,
17 unless frivolous, concerning the conditions in which they are being confined are
18 deemed petitions for redress of grievances and thus are protected by the First
19 Amendment.") (internal quotation marks omitted); *Williams*, 2020 U.S. Dist.
20 LEXIS 39718, at *8 (D. Idaho Mar. 6, 2020) (recognizing that a grievance that is
21

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
SUMMARY JUDGMENT MOTION ~ 10

merely "a string of insults" is not a substantive grievance and does not qualify as a protected petition for redress).

In addition, First Amendment protection does not extend to an inmate's verbal or written threats against prison staff. *Brodheim*, 584 F.3d at 1273. A prison official may reject a written grievance without action if the language poses "a substantial threat to security and discipline" at the prison. *Id.*

### Qualified Immunity

Defendants maintain that they are entitled to qualified immunity from Plaintiff's right to petition claim. ECF No. 100 at 4.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotes omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). When a government official invokes qualified immunity from suit, the Court must decide whether qualified immunity shields the official by applying a two-part analysis: (1) whether the conduct of the official, viewed in the light most favorable to plaintiff, violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232–36. The district court may analyze either prong of qualified immunity first. *Id.* at 236.

The Ninth Circuit held that Defendant Aiyeku is not entitled to qualified immunity on Richey's right to petition claim with respect to the 25 grievances

raised in the original Complaint. *Aiyeku*, 790 Fed. Appx. at 116 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). The Ninth Circuit likewise held in another case filed by Plaintiff against a different DOC official that the law is well-established in this Circuit that disrespectful language in grievances constitutes protected speech. *Dahne*, 733 Fed. Appx. at 883 (interpreting the scope of the holding in the 2009 *Brodheim* opinion as determining that "rules prohibiting disrespectful language do not serve a legitimate penological interest in the special context of prison grievances.").

The law was well established before 2015 that disrespectful language in a grievance is protected speech, and a prison official violates the First Amendment when he or she refuses to allow the grievance to proceed through the administrative process if the inmate resubmits the grievance without rewriting it to remove the offensive language. *Dahne*, 733 Fed. Appx. at 883. The language and substance of the 25 additional grievances included in Plaintiff's First Amended Complaint is similar to the 25 grievances addressed in Plaintiff's original Complaint. *See* ECF No. 99. The Court, therefore, follows the reasoning of the Ninth Circuit holding regarding Defendant Aiyeku and her handling of Plaintiff's 25 grievances included in his original Complaint and finds that Defendants Aiyeku, Young, and Walker are not entitled to qualified immunity on Plaintiff's right to petition claim with respect to the fifty total grievances at issue in the First Amended Complaint.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 12

<u>Liability for Right to Petition Violation</u>

Having found that Defendants Aiyeku, Young, and Walker are not shielded by qualified immunity with respect to a First Amendment right to petition violation, the Court finds that the same Ninth Circuit authority compels a finding, as a matter of law, that Defendants violated Plaintiff's right to petition for redress of grievances. The undisputed fact before the Court is that, between June 2015 and May 2016, Defendants instructed Plaintiff to rewrite his grievances because they contained offensive language, and Defendants administratively withdrew Plaintiff's grievances when he resubmitted them without rewriting them. *See* ECF Nos. 99 and 100. There is no material dispute as to whether they contained threatening language or whether the grievances also contained substantive complaints seeking remedial action through the OGP. Therefore, under *Brodheim*, 584 F.3d at 1273, which was issued in 2009, Defendants violated Plaintiff's constitutional right when they administratively withdrew Plaintiff's written grievances because Plaintiff had not removed the disrespectful language.

The Court must further determine whether, as Defendants assert, Plaintiff alleges "no injury" from Defendants' administrative withdrawal of his fifty grievances, because he could have rewritten the grievances to participate in the grievance program. ECF No. 100 at 23. Defendants argue that because Plaintiff has not alleged or supported any injuries, Plaintiff has not alleged or shown any facts to support an award of either punitive or compensatory damages. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 13

While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, a plaintiff may not prevail on such a claim unless he can show that he suffered an "actual injury" as a result of a defendant's actions. *Lewis v. Casey*, 518 U.S. 343, 351–53, 354–55 (1996) (a plaintiff pursuing any denial of access claim must show that he suffered an "actual injury" as a result of the defendants' actions). Moreover, punitive damages may be awarded in a section 1983 action only "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiff alleges that Defendants instructed him to rewrite grievances for containing "abusive and derogatory" language, but did not explain what language they found to be "abusive and derogatory." ECF No. 99 at 2. When Plaintiff resubmitted the grievances without removing language, Defendants administratively withdrew them. *Id.* at 2–3. Plaintiff further maintains that "it has been established that defendants knew or should have known that even abusive, derogatory, or disrespectful language in grievances is protected under the First Amendment." ECF No. 101 at 5 (citing *Brodheim*, 584 F.3d at 1271).

However, Plaintiff has not submitted any evidence to support that Defendants acted with evil motive or intent or callous indifference or that their actions rose to the high standard of culpability required for punitive damages.

1  There are neither any facts to support summary judgment for Plaintiff on the issue
2  of punitive damages, nor any question of material fact, even viewing the facts in
3  the light most favorable to Plaintiff, to allow the punitive damages issue to proceed
4  to a jury.  Therefore, the Court grants summary judgment in part in dismissal of
5  Plaintiff's claim for punitive damages.
6      With respect to the compensatory damages, Plaintiff has not articulated any
7  claim for physical injury or any other harm he suffered for which he could be
8  compensated.  Compensatory damages are meant to reasonably and fairly
9  compensate a plaintiff for an actual injury that was caused by the defendant.  *See,*
10 *e.g., Carey v. Piphus*, 435 U.S. 247, 264–65 (1978).  Damages "based on the
11 abstract 'value' or 'importance' of constitutional rights" are not permissible in a
12 section 1983 case.  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310
13 (1986).  By contrast, a plaintiff who has met his burden of showing a violation of a
14 constitutional right may receive nominal damages without proof of any injury.  *See*
15 *Memphis Cmty. Sch. Dist*, 477 U.S. at 308, n. 11.
16     Plaintiff's First Amended Complaint does not allege any injury that resulted
17 from Defendants' inhibition of Plaintiff's right to petition, and Plaintiff does not
18 provide any evidence supporting his Motion for Summary Judgment of an injury
19 that resulted in any out-of-pocket expenses by Plaintiff.  Therefore, Plaintiff has
20 failed to prove any causation that justifies compensatory damages.  Accordingly,
21

the Court grants summary judgment in part to Defendants on the matter of dismissal of Plaintiff's claims for compensatory damages.

### ***Retaliation***

To prevail on a First Amendment retaliation claim, an inmate plaintiff must demonstrate that (1) the plaintiff engaged in conduct that is protected under the First Amendment; (2) a prison official took "adverse action" against the plaintiff; (3) the protected conduct was the "substantial" or "motivating factor" behind the defendant's conduct; (4) the adverse action "chilled" the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim*, 584 F.3d at 1269–73.

### Qualified Immunity

Defendants argue that they are entitled to qualified immunity for the First Amendment retaliation claim.

In 2020, the Ninth Circuit held that Defendant Aiyeku is entitled to qualified immunity on Plaintiff Richey's retaliation claim with respect to the first set of 25 grievances from 2015 and 2016. *Aiyeku*, 790 Fed. Appx. at 116 ("[E]ven resolving all factual disputes and drawing all reasonable inferences in Richey's favor, it would not have been clear to every reasonable official that merely refusing to accept a grievance for processing is a retaliatory adverse action that violates a prisoner's First Amendment rights) (citing *Brodheim*, 584 F.3d at 1271–73). In 2018, the Ninth Circuit held that another official sued by Richey for refusing to

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 16

1  accept a grievance for processing also was entitled to summary judgment on

2  qualified immunity grounds. *Dahne*, 733 Fed. Appx. at 884 ("Neither our prior

3  case law nor that of the Supreme Court has clearly established that merely refusing

4  to accept a grievance for processing is a retaliatory adverse action."). If the Ninth

5  Circuit held that case law did not clearly establish that refusing to accept or process

6  a grievance amounted to a retaliatory action by 2018 and 2020, Defendants'

7  actions in 2015 and 2016 also were not clearly established as retaliatory.

8  Therefore, the second prong of qualified immunity, a violation of clearly

9  established law, has not been met, and Defendants are entitled to qualified

10 immunity in the retaliation claim.

11     The Ninth Circuit decisions are binding on this case, and Defendants

12 Aiyeku, Young, and Walker are entitled to summary judgment based on qualified

13 immunity from Plaintiff's retaliation claim.

14     Accordingly, **IT IS HEREBY ORDERED**:

15   1.   Plaintiff's Motion for Summary Judgment, **ECF No. 99**, is

16        **GRANTED IN PART** with respect to Defendants Aiyeku, Young,

17        and Walker's liability for Plaintiff's right to petition claim. Plaintiff's

18        Motion is **DENIED IN REMAINING PART**.

19   2.   Judgment shall be entered for Defendants Aiyeku, Young, and Walker

20        with respect to Plaintiff's First Amendment retaliation claim under

21

section 1983.  Judgment also shall be entered for Defendants on Plaintiff's claims for punitive and compensatory damages.

3. Judgment shall be entered for Plaintiff and against Defendants Aiyeku, Young, and Walker on Plaintiff's right to petition claim. Plaintiff is entitled to nominal damages only, which may not exceed one dollar in the Ninth Circuit.  *See* Ninth Circuit Model Civil Jury Instruction § 5.6 ("Nominal damages may not exceed one dollar."); *see also Floyd v. Laws*, 929 F.2d 1390, 1401 n. 9 (9th Cir. 1991). Therefore, the judgment shall include a nominal damages award of one dollar ($1.00).

The District Court Clerk is directed to enter this Order, provide copies to Plaintiff and counsel, enter judgment as directed, and **close the file** in this case.

**DATED** March 19, 2021.

                                       *s/ Rosanna Malouf Peterson*
                                         ROSANNA MALOUF PETERSON
                                             United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SUMMARY JUDGMENT MOTION ~ 18